

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00527-CR

Jessie **HERNANDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR11144
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Jason Pulliam, Justice

Delivered and Filed:  September 21, 2016

AFFIRMED

Jessie Hernandez was convicted of aggravated assault against a public servant and was sentenced to life in prison.  The sole issue presented on appeal is whether the trial court abused its discretion in admitting evidence during the punishment phase of the trial "that demonstrated to the jury that [Hernandez's wife] had suffered a miscarriage following a sexual encounter with the appellant."  We overrule Hernandez's sole issue and affirm the trial court's judgment.

## BACKGROUND

On September 19, 2013, a 911 caller stated she heard a woman screaming and saw a man grab her and drag her back inside a house. The woman, later identified as Hernandez's wife, testified Hernandez was angry and slammed her onto a concrete floor, injuring her back. When she tried to leave the house with their two children, Hernandez dragged her back inside the house, closed the blinds, and ordered her to unlock her cell phone. While Hernandez's wife struggled to enter the password, Hernandez pointed a gun at her head and threatened to shoot her. Hernandez's wife begged Hernandez to shoot her and not their children who were two years old and six months old at the time.

Hernandez's wife was living with Hernandez's mother and stepfather who arrived home while the incident was unraveling. Neighbors standing outside informed the couple of what had been observed, and Hernandez's stepfather thereafter entered the house. Hernandez told his stepfather he did not want him there; however, his stepfather was concerned about the children and kept slowly moving toward the living room where he saw Hernandez's wife seated on the couch with the two children. Hernandez's mother called 911. When Hernandez asked if she was calling the "cops," she told him she was indeed calling.

Officer Tiffany Kierum was the first officer to respond to the call, and she entered the house with Hernandez's mother. Hernandez was yelling at his mother saying he told her not to call the "f\*\*king cops." Officer Kierum asked Hernandez's wife to step outside with her. Hernandez ordered his wife to stay where she was, and Hernandez's wife informed Officer Kierum that she was unable to walk.[1] At that time, Hernandez's stepfather was standing in front of Hernandez blocking part of Officer Kierum's view of Hernandez. Hernandez's stepfather was

---

[1] Although Hernandez's wife did not tell Officer Kierum at the time, she testified at trial that she was unable to walk due to her back injury.

attempting to calm Hernandez. Although Hernandez's stepfather knew Hernandez was holding a gun, he did not tell Officer Kierum. Hernandez's stepfather told his wife to take the children, and Hernandez's mother took the children upstairs as Officer Balderamas arrived at the scene.

When Officer Balderamas entered the house, Officer Kierum explained to him that Hernandez's wife was unable to walk so she was going to help her. As Officer Kierum approached Hernandez's wife, Hernandez pushed his stepfather aside, shot Officer Kierum in the face, and shot Officer Balderamas in the thigh causing the officer to fall to the ground. After Hernandez fired the shots, Hernandez's stepfather began wrestling with him over the gun. Hernandez broke away from his stepfather and stepped toward Officer Kierum with the gun. At that point, Officer Balderamas was able to shoot Hernandez causing Hernandez to drop his gun. Additional officers arrived at the scene, and Hernandez was arrested.

Hernandez's stepfather testified Hernandez intended to shoot himself in the head, and, as he struggled with Hernandez over the gun, the gun discharged hitting the two officers. Neither officer recalled Hernandez struggling with his stepfather before the gun discharged. After hearing the evidence, the jury convicted Hernandez of aggravated assault of Officer Kierum, a public servant.

During the punishment phase of the trial, Officer Balderamas testified the bullet shattered his femur. As a result, he underwent an eight hour surgery during which a rod was placed in his leg. Officer Balderamas required four months of rehabilitation for his leg and still experiences pain in his leg. Officer Balderamas was finally released to return to work in April 2015.

Officer Kierum underwent eighteen surgeries in nineteen months. She lost all of her hearing in one ear and has permanent impairment to her sinus cavity and her left eyelid. Because of the damage to her sinus cavity, Officer Kierum is required to irrigate her nose twice a day. Officer Kierum also suffered nerve damage causing paralysis on one side of her face. She

underwent a nerve transplant and still has not regained the ability to fully smile. Officer Kierum's jaw was also fractured, requiring extensive rehabilitation.

Hernandez's wife also testified during the punishment phase of the trial. She testified Hernandez had been violently and physically abusive to her three times in the past. One time, Hernandez shoved her into a wall stomach-first when she was six months pregnant causing her to fracture her clavicle. Hernandez's wife also testified about a different incident when Hernandez came to a hotel where she was staying and made her engage in sexual intercourse when she was six months pregnant. That night, she started cramping and gave birth to a stillborn child. Although Hernandez's wife believed the child being stillborn was related to Hernandez making her engage in sexual intercourse, she was told the child had already been dead for two days as a result of gastroschisis – a medical condition that caused the child's internal organs and heart to form outside the child's body. Finally, although Hernandez had threatened his wife not to require him to pay child support, Hernandez was served, either the day before or the day of the shootings, with a notice requiring him to pay child support. The jury also heard a recording of a phone call between Hernandez and his wife that occurred before trial while Hernandez was in jail. During the conversation, Hernandez blamed his wife for his current situation and accused her of choosing the State's side and helping the State.

The jury also heard evidence related to Hernandez's previous employment as a police officer with the Corpus Christi Police Department. A teacher at a middle school Hernandez was assigned to patrol testified Hernandez made her uncomfortable and placed a pornographic image on her computer. The teacher reported the incident. Another witness testified Hernandez was off duty when he arrived at a party she was hosting. Hernandez went through the witness's personal items and looked through her camera, which contained sexual photos and videos of the witness and her boyfriend. That witness also reported the incident. Finally, a thirteen-year-old student at

the middle school Hernandez patrolled testified Hernandez was always watching her and asked her to wear a dress or skirt to school on the days he worked. Hernandez was subsequently fired from the police department.

Hernandez also testified during the punishment phase of the trial, confirming his intent was to kill himself but the gun discharged during the struggle with his stepfather. Hernandez disagreed with his wife's accounts of the prior abuse.

At the conclusion of the punishment phase of the trial, the jury assessed Hernandez's punishment at life in prison.

## DISCUSSION

As previously noted, Hernandez's sole complaint on appeal is the trial court abused its discretion in allowing his wife to testify about her child being stillborn. Hernandez asserts the trial court erred in allowing "for the admission of evidence of a highly prejudicial nature without any demonstration by the prosecution that the appellant had committed some act or omission that led to the still birth of the child. The State may have proven the event occurred; it did not even approach proving beyond a reasonable doubt that the appellant bore responsibility for that event."

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does not abuse its discretion unless its ruling lies outside the zone of reasonable disagreement. *Id*.

Rule 403 only requires the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Rule 403 presumes relevant evidence will be more probative than prejudicial. *Martinez*, 327 S.W.3d at 737. Moreover, rule 403 does not require a trial court to exclude evidence "simply because it creates prejudice; the prejudice must be 'unfair.'" *Id*. "The danger of unfair prejudice exists only when the evidence has the potential to impress the jury in an irrational way." *Id*. (internal citations omitted).

In this case, the evidence was not unfairly prejudicial because evidence was admitted to establish Hernandez was not responsible for the miscarriage. After describing the stillbirth, Hernandez's wife testified the unborn child had died two days before Hernandez made her engage in sexual intercourse and the child's death was caused by a serious medical condition. The State never attempted to prove Hernandez bore any responsibility for the stillbirth. Instead, the State simply raised it to establish another incident of Hernandez's abuse of his wife and the fears Hernandez's wife faced believing the abuse was linked to the stillbirth. Because the evidence did not have the potential to impress the jury in an irrational way, the trial court did not abuse its discretion in allowing the evidence to be admitted.

Even if we were to assume, however, the trial court abused its discretion in admitting the evidence, we would hold the admission of the evidence was harmless. Nonconstitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). "[S]ubstantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (internal citations omitted). In this case, the admission of the evidence establishing Hernandez was not responsible for the stillbirth fairly assures us the evidence that Hernandez's wife suffered a miscarriage did not influence the jury or had but a slight effect. The jury's assessment of Hernandez's sentence was supported by the horrific injuries he inflicted on the two police officers, his violent abuse of his wife on the night of the shootings, his past abuse of his wife, his placing blame on his wife for his current situation, and the conduct in which he engaged while a police officer. Accordingly, even if the trial court erred in admitting the testimony of Hernandez's wife regarding her miscarriage, its admission was harmless.

## CONCLUSION

The trial court's judgment is affirmed.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH